(52 South. 765.)

No. 18,234.

LOUISIANA GLASS & MIRROR WORKS, Limited, v. IRWIN et al.

In re IRWIN.

(June 6, 1910. Rehearing Denied June 28, 1910.)

*(Syllabus by the Court.)*

1. MECHANICS' LIENS (§ 229*)—MATERIALMEN—CLAIMS OF SUBCONTRACTOR.

Under the provisions of Act No. 134, p. 223, of 1906, relative to building contracts in cities in this state of over 50,000 inhabitants, a furnisher of materials under a contract with the undertaker, who has not filed a sworn statement of his claim with the owner, and has not caused the same to be recorded, as required by the third paragraph of the first section of said act, within 45 days after the date of the completion of the building, has no cause of action against the owner in default for not exacting bond and surety from the contractor.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 229.*]

2. MECHANICS' LIENS (§ 229*)—LIABILITY OF OWNER—FAILURE TO EXACT BOND.

Under said Act of 1906, the owner in default is not bound personally as under Act No. 180 of 1894 as amended by Act No. 123 of 1896, but only "to the same extent as the surety would have been," and such surety is not bound except as to claims duly recorded within the legal delay.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 229.*]

Action by the Louisiana Glass & Mirror Works, Limited, against Widow Edward D. Irwin and others. Judgment for defendants was reversed by the Court of Appeal, and Widow Edward D. Irwin applies for certiorari or writ of review. Judgment of the Court of Appeal vacated, and judgment of the First city court affirmed.

Sidney F. Gautier (Hall, Monroe & Lemann, of counsel), for plaintiff. McCloskey & Benedict, for defendants.

LAND, J. The case for review is clearly stated by the judge of the First city court as follows:

"In this suit judgment is sought to be obtained against Mrs. Irwin, with lien and privilege on her property, plaintiff claiming that in the year 1909 plaintiff furnished, sold, and delivered certain materials, etc., which were used by the contractor Shaddinger, in the construction, repair, building, or reconstruction of a house on property owned by Mrs. Irwin.

"There is no contention as to the facts; the case as presented to the court showing as follows:

"That the contract exceeded $100; that there was no written contract, and that there was no bond; that the material sued for in this case was used in the construction of the building referred to in the petition herein; that no attested account was served on Mrs. Irwin, within 45 days from the completion of the contract; and that no sworn account of plaintiff was recorded in the mortgage office of this parish."

The judge held that the plaintiff had no lien or privilege for want of the registry of its claim as required by law, and had no recourse against the owner personally, because of plaintiff's failure to file a sworn statement of its claim with the owner, and to record a similar sworn statement in the mortgage office within 45 days after the completion of the building, as required by paragraph 4, § 1, of Act 134 of 1906.

From a judgment dismissing the suit as to Mrs. Irwin, the plaintiff appealed to the Court of Appeal, where the cause was heard and determined by one of the judges of said court.

Without assigning any reasons in writing the judgment was amended by condemning Mrs. Irwin, in solido, with the contractor, to pay the full amount sued for, with interest

and costs, and by recognizing the lien and privilege as claimed by the plaintiff on Mrs. Irwin's lot and building. The case comes before us on a writ of review.

The decision of this cause hinges on the proper construction of Act No. 134, p. 223, of 1906, relative to building contracts in cities of over 50,000 inhabitants.

The provisions of said statute may be succinctly stated as follows:

The first section provides that all building contracts for $1,000 or more shall be in writing and signed by the parties, and shall be duly recorded in the office of the recorder of mortgages, wherein the work is to be executed, before the day fixed on which said work is to commence, and not later than seven days after the date of the contract; and that such recordation shall create a lien and privilege on the building and ground or other work, in favor of the contractor, subcontractor, workman, furnisher of materials, etc., as their interests may appear.

The second paragraph provides that the owner shall require of the contractor a good and solvent bond for not less than one-half of the amount of the contract price, to be recorded with the contract, and conditioned for the true and faithful performance of the contract, and the payment of all subcontractors, workmen, laborers, mechanics, and furnishers of materials, etc., said bond to be made in favor of the owner, subcontractors, etc.

The third paragraph provides that every person having a claim against the contractor, etc., shall file a sworn statement thereof with the owner, and shall record a sworn statement thereof in the office of the recorder of mortgages for the parish where the work has been done within 45 days after the completion of the contract.

The fourth paragraph provides that, if at the expiration of said 45 days there are no such recorded claims, the recorder of mortgages shall, at the request of any party in interest, cancel and erase all inscriptions of the contract and bond.

The fifth paragraph relates to proceedings on objection to the solvency of the surety on the contractor's bond.

The sixth and seventh paragraphs read as follows, to wit:

"If objection is made to the sufficiency or solvency of the surety, this objection shall be tried summarily, and if the surety is found to be not solvent or insufficient to cover the full amount for which he is bound, or if the owner fails to exact said bond, or if he fails to have the same recorded in the office of the recorder of mortgages in the manner and within the time hereinabove provided, the owner shall be deemed in default, and shall be liable to the same extent as the surety would have been. The surety herein shall be limited to such defenses only as the principal on the bond could make."

"The purpose of this act is to require owners to secure bond with solvent and sufficient surety from the undertaker, contractor, master mechanic or engineer, for the protection of all parties interested in the contract, as their interests may appear, and which said surety is to stand in the place and stead of a defaulting undertaker, contractor, master mechanic or engineer."

If the owner be bound under the statute he is "liable to the same extent as the surety would have been." The owner who has failed to exact bond and surety is on the same plane with the owner who has permitted the contractor to give an insolvent or insufficient surety.

It is very clear, in the case of an insufficient or insolvent surety, that a person, who has failed to file a sworn statement of his claim with the owner, and to duly record the same, within the delay of 45 days, has no right of action on the bond, which may be summarily erased and canceled upon the written demand of any party in interest. In case no bond be furnished, nothing prevents the workman or furnisher of materials from filing his sworn statement with the owner, and recording his claim within the legal delay, for the purpose of holding the owner as surety.

In the interest of the prompt and speedy

settlement of mechanics' liens against buildings and other structures, all of the statutes on the subject-matter require the recordation of claims within brief periods of time after the completion of the work. Under Acts 180 of 1894 and 123 of 1896, the bond continues in force only 90 days, and under Act 134 of 1906, when no claim is recorded, the bond may be canceled after the lapse of 45 days. There is no privity of contract between the owner and persons who furnish materials to the contractor, and the latter in order to acquire a right of action against the owner must comply strictly with the requirements of the statute. The Civil Code requires the service of an attested account on the owner, before payment is due or made to the contractor, and Act 134 of 1906 provides for the filing of a sworn statement with the owner within 45 days after the completion of the building. In the case at bar, the furnisher has complied with neither the requirements of the Code, nor of the statute. The noncompliance of the owner does not dispense the furnisher of material under Act 134 of 1906 from fulfilling on his part the requirements of the statute. The act of 1906 differs in several material respects from Act No. 180 of 1894 as amended by Act No. 123 of 1896. Under the last statute the owner who does not comply with its requirements is made "personally liable for all balances due to the workmen, laborers and furnishers of materials used in the building," and the recordation of sworn claims is for the sole purpose of acquiring a lien on the land and building. Under the act of 1906, the owner in default is not bound personally, but only as surety, and the lien claimants are required not only to record sworn statements of their accounts, but to file duplicates with the owner, within the short delay of 45 days after the completion of the building. In the instant case, if bond had been given and recorded as requir-

ed by the act of 1906, it is plain that prescription of 45 days would avail the surety. In the words of the law the owner in default "is liable to the same extent as the surety would have been."

It is therefore ordered that the judgment of the Court of Appeal in this case be vacated and set aside, and that the judgment of the First city court be affirmed, and that the plaintiff pay costs in both appellate courts.