## No. 2101
### Second Circuit Appeal

## JULIUS. AARON & SON v. MRS. JOSE PHINE KEYSER, ET AL.

(April 11, 1925, Opinion and Decree)
(June 13, 1925, Rehearing Refused).

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Obligations—Par. 74, 76.**

Where the evidence clearly shows that a contractor who undertook to construct repairs to a building agreed to build it for a certain price including the labor and material, the contractor is liable for whatever unpaid balance that remains on the bill for the material furnished and used.

2. **Louisiana Digest—Mechanic's Privileges —Par. 46.**

Where the owner of a house lets a contract for more than $500.00 without having it reduced to writing and without requiring the bond required by Act 262 of 1916, she is liable for the material used on her house, even though, she did not purchase it with her order or sanction.

3. **Louisiana Digest—Building and Loan Associations—Par. 3.**

The sale of property to a Building and Loan Association, and its resale back to the owner, reserves a vendor's privilege and special mortgage on the property sold as security which the Building and Loan Association has for its loan. The title still remains in the borrower, owner.

4. **Louisiana Digest—Pleading—Par. 114, 131.**

The fact that the act attached to the plaintiff's petition does not contain the name of the contractor who ordered the material is of no importance where the testimony shows that he was the contractor and bought the material and used it in this work.

5. **Louisiana Digest—Privileges—Par. 2.**

Privileges are stricti juris and can be claimed only for those debts to which they are expressly granted by law.

6. **Louisiana Digest—Mechanic's Privileges —Par. 18, 21.**

An account recorded by the furnisher of material headed "sold to A. M. Dearing, J. C. Keyser Building" does not give any privilege to the material man because it has not complied with the provisions of Act No. 229 of 1916, requiring that he shall file in the office of the Recorder of Mortgages a statement setting forth, first, the amount of the claim and the items thereof; second, the name of the owner; third, the name of the contractor; fourth, the name of the claimant, and fifth, the description of the property subject to the privilege.

7. **Louisiana Digest—Mechanic's Privileges —Par. 18, 21.**

Construing Act 229 and Act 262 of 1916 together, the statement to be recorded should be ample enough to show at least the name or names of the debtors or the persons intended to be bound and such description of the property as will enable any one to identify it.

ON APPLICATION FOR A REHEARING.

8. **Louisiana Digest—Mechanic's Privileges —Par. 46; Laws—Par. 84, 85.**

Under Act 229 of 1916 the owner cannot by failing to take a bond deprive the material men of the rights given them by Act No. 262 of 1916, for this would read out of Act 262 of 1916 the provision that if the owner fails to secure bond, the owner shall be in default and shall be liable to the same extent as the surety would have been.

Appeal from Eleventh Judicial District Court of Louisiana, Parish of Natchitoches, Hon. J. W. Jones, Jr., Judge.

This is a suit against the owner of a building and the contractor who made repairs to it for judgment against them *in solido* for materials furnished and for recognition of material men's lien. There was judgment for plaintiffs and against the defendants *in solido* with recognition of plaintiffs' lien and privilege on the property repaired. Both defendants appealed. Judgment affirmed for plaintiffs and against defendants *in solido* but reversed

insofar as it recognizes a lien and privilege on the property.

M. L. Dismukes, of Natchitoches, attorney for plaintiffs, appellees.

J. O. Gunter, Rusca and Cunningham, of Natchitoches, attorneys for defendants, appellants.

CARVER, J. ODOM, J. Plaintiffs, Julius Aaron & Son, brought this suit against A. H. Dearing and Mrs. Josephine Keyser and asked for judgment against them in solido for $472.43, the alleged debt being for material furnished the defendants to be used and actually used in the repairing and rebuilding a residence belonging to said Mrs. Josephine Keyser in the parish of Natchitoches, Louisiana.

It is alleged that said A. M. Dearing had a contract with Mrs. Keyser for the repairing and remodeling of her residence, which contract was never reduced to writing and recorded as required by law; and that there was no bond required or given to secure proper performance of the contract and payment of the laborers and material men; and further alleged that plaintiffs recorded a sworn statement of their account and handed one to defendants on February 23, 1923—within the delays specified by law; and further allege that no formal acceptance of the work was ever filed or recorded in the office of the recorder of mortgages of the parish of Natchitoches as required by law. And the petitioners ask for judgment for the amount of the account and that their lien and privilege allowed by law to furnishers of material be recognized and ordered enforced.

Defendant, Mrs. Josephine Keyser, answered, denying any indebtedness, and especially denied purchasing any material from plaintiffs, and alleges that the materials were purchased by said A. M. Dearing, as a contractor, to remodel a home

owned by her; and she says that the money paid out was paid by the Natchitoches Building and Loan Association, and that she conveyed her property to said Building and Loan Association with the view of having it remodel her home, and that the contract for remodeling the same was entered into by said Dearing and said Building and Loan Association. She denied that a statement of the account was ever handed to her or properly recorded, and denied that the account sued on was correct; and she sets up that some of the material charged for on the account was not used on the building.

Dearing, the other defendant, answered, denying any indebtedness to plaintiff, and sets up that he agreed to repair the residence of Mrs. Keyser but that no price was agreed upon, but that:

"All materials were to be furnished and labor paid and your respondent was to receive ten per cent plus the cost of material and labor."

He admits that the material charged for in plaintiffs' bill was gotten by him and used in the repairing of the Keyser residence and that he approved the bill, but states that Mrs. Keyser instructed him to buy said material.

There was judgment in the lower court in favor of plaintiffs and against defendants in solido for the amount sued for with recognition of plaintiffs' lien and privilege on the property repaired; from which judgment both defendants appeal.

## OPINION

The defendant, A. M. Dearing, is a contractor in the city of Natchitoches. He entered into a contract—or an agreement as he calls it—to repair and remodel the residence of Mrs. Josephine Keyser, the other defendant, which residence is in the city of Natchitoches. He began the work about the 1st of August and, according to his testimony, was engaged thereon about three months. There is some controversy over the question as to whether he ever completed the work which he set out to do, but in the view which we take of the facts and the law applicable in this case we do not think it is important whether he did or did not complete the work.

It is certain, however, that no formal acceptance of the work has ever been made by the owner and recorded as is required by Acts 229 and 262 of 1916.

These points, that is, as to the completion of the work and acceptance thereof by the owner, are raised in the pleadings and discussed in the briefs, but they are not issues in the case under the view that we take of it.

The testimony of Dearing is not clear as to what kind of a contract he had with Mrs. Keyser; but J. C. Keyser, Jr., a son of Mrs. Keyser, says there was a plan for the remodeling of the house made by his brother and that contractors were invited to make bids according to those plans and that they received two bids—one from Perini & Prudhomme and one from A. M. Dearing, and that Dearing's bid was $400.00 under the other one.

And he says that under the Dearing bid, which was accepted, Dearing was to furnish all the material and labor that is, was to fix the house, for the sum of $1,836.45. His testimony on this point is corroborated by T. T. Hodges, who was in partnership with Dearing at the time the bids were called for, who says that Dearing brought to him a sketch from the Keysers and asked him what it would cost to do the work, and that he did the figuring, and he says—

"Mr. Dearing was to supervise the work, I put down on the estimate everything that we agreed to do with the estimated prices. I copied in prices with the prices

of material at that time as I do now, and what we agreed to do it for, and this looks like the estimate I gave Mr. Dearing on the Keyser house."

He does not state the amount of the estimate.

Mr. Paul A. Ducournau, the secretary of the Natchitoches Building & Loan Association, says that his Association had a plan of the contemplated improvements and the contractor's figures as to the cost. when Mrs. Keyser was granted a loan in order to enable her to make the repairs to her residence which she contemplated. He says that after the work was agreed upon the Keysers wanted a sleeping porch added the cost of which was $300.00 making a total of $2,136.00.

Dearing says that the Keysers added the sleeping porch which he agreed to build for $300.00. This corresponds with J. C. Keyser, Junior's, testimony that Dearing was to do the work, originally, for $1,836.45.

Counsel for Dearing contends that his client 'did not have the work under a specific contract to furnish the material and do the work at a stipulated price but that he was to purchase the material and do the work and that the Building & Loan Association was to pay for the material and labor as the work progressed and that Dearing was to receive, as compensation for his services ten per cent of the cost of the labor and material. In other words, that Dearing was to act as the agent of Mrs. Keyser in the purchase of all material and in the employment of laborers and that he was simply to supervise the work and was to receive as his compensation therefor ten per cent of the cost thereof.

Of course if the agreement was that Dearing was to do no more than supervise the work, purchase the material and employ the labor for Mrs. Keyser, he acted as her agent in all he did and is not liable for the debt due the furnishers of material.

But, on the contrary, if he was to furnish all the labor and material and do the work for a stipulated price, he is bound.

But, as stated, the testimony of Dearing does not make it clear to us that his contract was, as his counsel states it was although in his testimony he speaks about his furnishing the material, etc. (page 29). He says:

"I furnished a lot more lumber than was specified and paid for it. I paid $408.00 more at Campti than I figured on, The amount I paid at Campti was $770.85."

And he says:

"They asked me how much it would cost to put a sleeping porch on the house, and I said four hundred dollars, and I agreed to do it for three hundred dollars, and they agreed to pay for it. They agreed to pay for the extras themselves and I went ahead and done it."

This testimony is not at all consistent with his contention now that this was to be a "cost plus" job. The sleeping porch was extra and he agreed to build that for $300.00. If the contract was originally for a cost plus job, it seems but reasonable to assume that the extras would have been contracted for on the same basis. And then the fact he bought the lumber from Frost-Johnson Lumber Co., at Campti and had it charged to himself personally and that he purchased other material from the plaintiffs and had it charged to "A. M. Dearing, J. C. Keyser residence" is not consistent with the idea that he was acting solely as Mrs. Keyser's agent. If he had been acting as Mrs. Keyser's agent and had agreed to supervise the work for her and receive as his compensation ten per cent of the cost of the labor and material, it would not have made any difference to him how much the sleeping porch cost and there would have been no

necessity for his making any specific bid on any of the work.

And yet we find, according to his own testimony, that he agreed to build the sleeping porch for the stipulated price of $300.00. Besides, as stated, there is positive testimony in the record that he agreed to make the repairs at a stipulated price.

We hold, therefore, that defendant Dearing is liable for whatever unpaid balance there remains on the bill for material furnished and used in the repairing of this house.

As to the liability of Mrs. Keyser for the price of these materials, it is contended that there were no contractual relations between her and the plaintiff. In other words, that she did not authorize the purchase of these materials.

This was a contract for more than $500.00 entered into for the repair and reconstruction of her residence. The contract was not reduced to writing and, of course, not recorded in the office of the Recorder of Mortgages, of the parish in which the building is situated. Nor did Mrs. Keyser, the owner, require of the undertaker a bond with good and solvent surety and have it recorded to secure the payment of all furnishers of material for the repair and reconstruction of said house, as required by Act 262 of 1916, page 536.

The purpose of that act, according to its specific terms is to require owners to procure bond with solvent and sufficient surety from the undertaker, contractor, master-mechanic, or engineer for the protection of all parties interested in the contract.

Not having required such contract and bond, she is in default, and is liable as a defaulting contractor.

This act specifically provides that—

"In default of surety the owner is to stand in the place of a defaulting undertaker, contractor, master-mechanic or engineer."

Therefore, Mrs. Keyser, the owner, not having had the contract for the repairing of her residence reduced to writing and recorded and not having required bond with good and solvent surety from the contractor, under the plain and unambiguous terms of the act, is liable for the unpaid balance due for all material furnished for and used in the repair and reconstruction of her house. She stands in the place and stead of a defaulting contractor. Mrs. Keyser failed to do what the law required that she should do for the protection not only of herself but of all laborers, materialmen and others interested in the contract.

We hold, therefore, that Mrs. Keyser is equally bound with A. M. Dearing for this debt under the letter of law. Furthermore, we see no reason why she should not be required to pay this debt as a matter of equity pure and simple. On the merits of the case, there is no dispute about the corrections of the account sued on. Plaintiff sold the material to Dearing for the Keyser house. Their original bill amounted to $722.45, on which there has been paid $250.00, leaving a balance of $472.45 yet due. The testimony is conclusive that all the material furnished by plaintiff was used in repairing Mrs. Keyser's house. The bills were approved by the defendant, Dearing, and J. C. Keyser, Junior, says that Dearing bought the material from plaintiffs. The testimony makes it clear to us that the material furnished by the plaintiff in this case was used in the repair of this residence and that Mrs. Keyser knew that the material, or a portion of it at least, was coming from plaintiffs. And furthermore the testimony makes it perfectly clear that no more than $1,500.00 of the contract price for the repair

of this house has been paid. Mrs. Keyser borrowed a sum of money from the Natchitoches Building & Loan Association with which to pay for the repairing of her house. The exact amount which she borrowed is not stated but we find in the record two deeds one from Mrs. Keyser to the Natchitoches Building & Loan Association for a stipulated consideration · of $2000.00 and the other by said Association to Mrs. Keyser, conveying the same property, stipulating a consideration of $2000.00 and reserving a vendor's privilege and special mortgage on the property sold, which, as we understand it, is in accordance with the rules of such associations in making loans.

We therefore conclude that the loan which the association made to Mrs. Keyser was $2000.00. All this money remained in the hands of the Building & Loan Association to be used in repairing her house. Not all of this money has been withdrawn for that purpose, for according to the testimony of Mr. Ducournau there remains in the hands of said Association a little more than $300.00 belonging to Mrs. Keyser. All of which shows that Mrs. Keyser has not yet paid for the work done and material used in the repair of her house. It seems that the Building & Loan Association is holding up payment of the balance in its hands subject to the orders of the court.

The defendant, Dearing, now stresses the fact that his name does not appear on the account attached to plaintiff's petition. We attach no importance to that fact. The testimony shows that he was the contractor and bought the material and used it in this work. That makes him liable for the debt. It is not the form used in making up a statement of an account which controls but the facts and circumstances surrounding the transaction.

Mrs. Keyser pleads that she did not purchase the material nor was it purchased with her order or sanction. We do not find that she purchased the goods and do not hold her bound for the debt on that ground; but she owes the debt because she let a contract for more than $500.00 without having it reduced to writing and without requiring the bond required by Act 262 of 1916, and because the testimony shows that the material was furnished by plaintiffs and was used in the repair and reconstruction of her house and neither she nor any one else has paid for this material.

ON THE QUESTION OF PRIVILEGE.

Plaintiffs contend that they have a first lien and privilege on the property repaired and ask the court to recognize the same and order the property sold to satisfy their debt.

There were no contractual relations between plaintiffs and defendant, Mrs. Keyser. Privileges are stricti juris and can be claimed only for those debts to which it is expressly granted by law. If plaintiffs have a privilege, it arises under some law specifically granting it. We do not find that plaintiffs have complied with any law on the subject. True, they did have recorded in the office of the Recorder of Mortgages their account within the time prescribed by law, as no formal acceptance of the work has been recorded by the owner and the delays for filing liens does not begin until such acceptance has been recorded; but they have not complied with the law in other respects. There is nothing in the statement recorded to show that Mrs. Josephine Keyser is the debtor of the debt nor is there any description of the property or the name of the contractor. The account which plaintiff had recorded is headed: "Sold to A. M. Dearing, J. C. Keyser building". J. C. Keyser was the husband of the defendant Mrs. Josephine Keyser but did not own the property which

was repaired. The building is not even described as a residence. J. C. Keyser may own other property. If the recordation of that statement created a privilege at all that privilege operated some specific property. The law which gives to the furnisher of material for the erection or repairing of buildings does not grant a general privilege but a privilege only in the structure erected or repaired. There is nothing in the recorded statement indicating that the material was sold to Mrs. Keyser or was used in the repair of her house. The proof in this case shows that the material sold by plaintiffs to Dearing was for the repair of her residence, and it is even admitted that it was used for that purpose and that the residence is correctly described in the petition. But the court does not and cannot create privileges. The court can do no more than recognize privileges which already exist. If plaintiffs have a privilege it exists by virtue of some law and not by virtue of any proof adduced on the trial of the case or any ruling of the court.

Act 229 of 1916, on the subject of building contracts and privileges, provides that any person claiming a privilege as a laborer or furnisher of material shall file in the office of the Recorder of Mortgages of the parish where the property is situated a statement setting forth, first, the amount of the claim and the items thereof; second, the name of the owner; third, the name of the contractor; fourth, the name of the claimant; and fifth, a description of the property subject to the privilege; verified by affidavit.

Act 262 of the same year on the same subject matter provides that all persons having claims against an undertaker, etc., shall file a sworn statement thereof with the owner and record a sworn statement thereof in the office of the Recorder of Mortgages, etc.

This latter act does not specifically set out that the name of the contractor, the name of the owner, and a description of the property shall be included in the recorded statement, but the act contemplates that the statement shall be full enough to identify it with some contract, some contractor, some property. It would be a vain and idle thing to record a statement of the account if there was nothing in the account to show who was the debtor.

Construing Act 229 and Act 262 of 1916 together, we think it is clear that the statement to be recorded should be ample enough to show at least the name or names of the debtors or the persons intended to be bound and such a description of the property as will enable any one to identify it.

In this case the statement does not name the contractor, does not state the name of the debtor, nor does it contain any description of the property. The only reference to any property that it contains is "J. C. Keyser, Sr., Building", and, as a matter of fact, J. C. Keyser, Sr., is not the owner of the property.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed insofar as it condemns the defendants, A. M. Dearing and Mrs. Josephine Keyser, in solido to pay the debt sued on. It is reversed insofar as it recognizes a lien and privilege on the property of Mrs. Josephine Keyser. The costs of the lower court are to be paid by defendants; those of this court to be paid by plaintiffs.

---

## ON APPLICATION FOR REHEARING.

REYNOLDS, J. In an able brief filed in support of her application for rehearing, counsel for Mrs. Josephine Keyser earnestly contend that our original decision herein is erroneous in holding her liable under Act 262 of 1916, and that Act 229 of that year is the sole measure of her liability.

They confidently urge that the question was determined favorably. to their contention in the cases of—

Rose vs. Eunice Theatre Co., 154 La. 97,. 97 South. 322; McKinney vs. Eunice Theatre Co., 154 La. 94, 97 South. 327.

McNaspy vs. Eunice Theatre Co., 154 La. 96, 97 South. 327.

They quote the following from the Rose case.

"If the owner complies with these conditions the Act (No. 262) is put into operation and works to his benefit by enabling him under certain conditions to rid his property of the privileges recorded against it before their payment and to throw the claimants on the bond."

"If he elects not to come under it, or fails to comply with the conditions imposed upon him, or does the work in such manner as not to come within its provisions, those with whom the owner has contracted, verbally or in writing, and those with whom the contractor has contracted, may resort to Act 229. So viewed the two acts are not conflicting. Each operates within its own sphere."

They also cite Musey vs. Prater, 147 La. 71, 84 South. 498, and quote therefrom as follows:

"We are of the opinion that Act 229 refers to all building contracts, regardless of amount, whether verbal or in writing, where no bond is given by the contractor, and the contract and bond are not recorded in the manner provided for in Act 262, and as none of these things were done by plaintiff .in this cause, the material men, defendants, have the right to assert their lien and privileges given under Act 229"

They conclude by saying that our opinion overrides both the Act 229 and the interpretations placed on it by the Supreme Court.

We have re-examined the question with great care and are constrained to adhere to our original opinion.

In the Eunice Theatre cases the contests were solely between furnishers of material and mortgagee whose mortgage was recorded prior to the registry of the instruments relied on to preserve the material-men's liens.

The question of the owner's personal liability not being involved, whatever was said on that question was *obiter dicta*.

The questions were in favor of the materialmen.

In the Musey case, the owner had made a contract and taken a bond, but the contract was not recorded at all and the bond was not as it should have been, in favor of the furnishers of material and labor, nor was it recorded in the time required by the Act No. 262. For these reasons the court held that the owner was not entitled to the benefits of the Act No. 262· and the materialmen could claim the benefits of Act 229.

But this is far from holding that by failing to take a bond the owner can deprive the materialmen of the rights given them by Act No. 262 and free himself from the liability that Act places on him. To so construe the Act would read out of it one of its most important provisions, namely, that part of it which says:

"If the owner fails to secure bond * * * the owner shall be in default and shall be liable to the same extent as the surety would have been."

The Supreme Court certainly did ˙not˙ mean that the Act would come into operation only when a bond was taken when this part of the Act makes express˙ provision for cases where it is not taken.

In saying, in the Rose case:

"If he (meaning the owner) elects not to come under it or fails to comply with. the conditions imposed upon him, or does the work in such manner as not to come within its provisions, those with whom . the owner has contracted˙ verbally or in, writing, and those with whom the contractor has contracted, may resort to Act 229."

The court meant no more than to say what it does, namely: That those with whom the owner or the contractor had contracted could resort to Act 229. The court did not mean and did not say that, that they could be confined to Act 229 as the sole measure of their rights and thus shut them out from any rights accorded to them by Act 262. Nor did the court mean or say that by failing to comply with the conditions of that Act the owner could free himself from a liability imposed on him by the Act for the very reason that he did fail to comply with its provisions.

A party may waive his rights but he cannot waive his responsibilities.

In Louisiana Glass & Mirror Works vs. Irwin, 126 La. 555, 52 South. 765, the court, construing Act 134 of 1906, held that a materialman could not recover because no attested account was served on the owner within forty-five days after completion of the contract and no sworn account was recorded in the mortgage office. Such service and registry within that time were necessary under that Act, but under Act 262 of 1916 such service and registry are only required to be made forty-five days "after the registry of notice with the recorder of mortgages by the owner of his acceptance of the work; until which time the delay to file privileges will not run".

In this case this notice had not been recorded at the time of the trial.

There is no difference between the two Acts. Act 134 of 1906 says the purpose of this act is to require owners to secure bond with solvent and sufficient surety from the undertaker * * * for the protection of all parties interested in the contract as their interest may appear and which surety is to stand in place and stead of a defaulting contractor.

Act 262 of 1916 says "the purpose of this act is to require owners to secure bonds with solvent and sufficient security of the undertaker * * * for the protection of all parties interested in the contract and as their interest may appear, and said surety and in default of surety the owner is to stand in the place of the defaulting undertaker, contractor, master mechanic or engineer".

Under Act 134 of 1906 if no claims were presented or recorded the owner could demand cancellation of the bond after forty-five days from completion of the contract.

Under Act 262 of 1916 the owner can demand this cancellation only after forty-five days from registry of his notice of acceptance.

In the Louisiana Glass & Mirror Works case the court said that under Act 134 of 1906 a materialman who had failed to file a sworn statement of his claim with the owner and to duly record same within the delay of forty-five days, has no right of action on the bond which may be summarily erased and cancelled on the demand of any party in interest.

We do not understand this to mean that he never had a cause of action but rather that his right had been extinguished.

But that cannot be said of a materialman who though he has not recorded his claim or served an attested account is yet in time to do so.

The most that can be said of a suit brought before such service or registry is that it is premature. But prematurity must be pleaded in *limine litis*, which was not done in this case.

See 6 Louisiana Digest, verbo "Pleading", paragraph 60.

If it had been, the proper course would have been to sustain the plea, but then the plaintiff could have made proper service and registry and then (unless in the meantime defendant had recorded notice

of acceptance and forty-five days had elapsed) could have renewed his suit.

Contracts are not the only sources of obligations. The law itself is sometimes a course and we think it is in this case.

Section 1 of the Act clearly states that if the owner fails to secure bond he shall be in default and shall be liable to the same extent the surety would have been; and states, further, that the purpose of the act is to require owners to secure bonds for the protection of all parties in interest, which surety, and in default of surety the owner, is to stand in the place of the defaulting contractor.

Under this clear language Mrs. Keyser is to stand in the place of the defaulting contractor, Dearing, and as he is clearly responsible for the material bought from plaintiffs, Mrs. Keyser is likewise responsible.

Counsel complains also of our saying that the case is well founded in equity, and ask "why should defendant pay the contract price and then pay the unpaid bills of the contractors?"

It seems clear to us that no contract between defendant, Mrs. Keyser and defendant, Dearing, and no payments made under that contract could give Mrs. Keyser any equitable right to keep plaintiffs' property without paying for it. It was once theirs. It is now hers. Presumably it was worth the price charged. If plaintiffs fail to recover it is a dead loss to them. If they do recover, it is not necessarily a loss to her and it may be a mere disappointment. The entire work may be worth all it cost, including this claim. If, however, it is a loss, to Mrs. Keyser, it must be because she or those acting for her allowed Dearing to draw too much on the contract price without seeing that he paid for the the material which went to improve her property.

Rehearing refused.